**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: **September 28 2023**

_____
John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 21-31239 |
| | ) | |
| Teresa Nadeau, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 21-03045 |
| | ) | |
| Douglas A. Dymarkowski, | ) | Judge John P. Gustafson |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Teresa Nadeau and | ) | |
| Teresa Nadeau, Trustee of the | ) | |
| 858 Revocable Living Trust, | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OF DECISION

This Adversary Proceeding is before the court for decision after trial on Plaintiff-Trustee

Douglas A. Dymarkowski's ("Plaintiff") *Amended Complaint to Avoid Fraudulent Transfer, to*

*Recover Property or in the Alternative to Revoke Trust and for Turnover of Property and to*

*Disallow Exemption* against Defendant-Debtor Teresa Nadeau ("Debtor"), individually and as

Trustee of the 858 Revocable Living Trust (hereinafter collectively referred to as "Defendants"). [Doc. #7]. Plaintiff's Amended Complaint prays for a judgment and order avoiding a certain transfer of real estate into a trust by Debtor.

## JURISDICTION AND VENUE

The district court has jurisdiction over this adversary proceeding under 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. The Chapter 7 case and all proceedings in it arising under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. §157(b)(2)(H). Venue is proper under 28 U.S.C. §1409(a).

In an action tried on the facts without a jury, the court must find the facts specially and state its conclusions of law separately. Fed. R. Civ. P. 52(a)(1). The court's findings of fact and conclusions of law are set forth below. *See e.g., Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 710 (6th Cir. 1999). Whether or not specifically referred to in this Memorandum of Decision, the court has examined all the submitted materials, weighed and observed the demeanor and credibility of the witness, carefully considered all the evidence, and reviewed the entire record of the case in determining the facts pertinent to the case and in drawing conclusions therefrom.

The parties filed a *Stipulation of Parties regarding Certain Facts and Admissibility of Exhibits*. [Doc. #27]. The parties stipulated to certain facts and the authenticity and admissibility of the exhibits used at the hearing.

## FINDINGS OF FACT

### *Joint Stipulation*

The Stipulation sets forth the following agreed facts:

(1)     The Debtor, Teresa Nadeau, filed for relief under Chapter 7 of Title 11 of the United

States Code on or about July 9, 2021.

(2)     That the Debtor is a named Defendant in this Adversary Proceeding.

(3)     That the Plaintiff is the duly qualified and acting Trustee of the Debtor's bankruptcy estate and has standing to bring the claims brought in this Adversary Proceeding.

(4)     That prior to filing her bankruptcy case, the Debtor owned a parcel of real property, described as follows:

> 920 Bury Rd
> Oregon, OH 43616
> Lucas County Parcel ID: 4445306
> Legal: 9 10 7 NE 1/4 NW 1/4 N 5 AC S 15 AC N 1/ 2 W ½
> (hereinafter referred to as "Property").

(5)     That at the time the Debtor sought bankruptcy relief, she used the Property as her residence.

(6)     That in her bankruptcy case, the Debtor claimed an exemption in the Property pursuant to 11 U.S.C. § 522 and R.C. § 2329.66(A)(1)(a)/(b).

(7)     That the Debtor, individually, acquired sole title to the Property through a general warranty deed dated May 17, 2013, and recorded with the Lucas County Recorder's Office on May 22, 2013.

(8)     That on or about September 2, 2019, the Debtor created a revocable living trust, named the 858 Trust Revocable Living Trust. ("Trust").

(9)     That the Trust is also a Defendant in this Adversary Proceeding.

(10)    That the Debtor is the Trustee of the Trust.

(11)    That the Debtor is the Grantor under the Trust.

(12)    That the Debtor is the lifetime beneficiary under the Trust.

(13)    That the Debtor, as the Grantor under the Trust, retained the right to Alter, Amend or Revoke the Trust during her lifetime.

(14)    That on or about September 9, 2019, the Debtor transferred all her interest in the Property, by way of a quitclaim deed, to the Trust, with said deed being recorded with the Lucas County Recorder's Office on September 9, 2019. ("Transfer").

(15)    That the Transfer of the Property to the Trust was a voluntary transfer.

(16)    That the Trust did not provide to the Debtor any consideration for the Transfer.

(17)    That the Debtor was not legally required to make the Transfer of the Property to

3

the Trust.

(18)     That the Trust is a self-settled Trust.

(19)     That the Debtor is the lifetime beneficiary with respect to the Property under the
         Trust.

(20)     That the Debtor's minor son[1] is the residuary beneficiary with respect to the
         Property under the Trust.

(21)     That the Trust is an Ohio Trust and governed by the laws of Ohio.

(22)     That prior to the Transfer of the Property to the Trust, litigation was pending against
         the Debtor in the Lucas County Common Pleas in a case styled Vidra, et al. v.
         Nadeau, Case Number CI-201801344-000.

(23)     That on or about October 3, 2019, the Court entered a judgment against the Debtor
         in the above referenced litigation in the amount of $19,873.24, plus interest and
         costs.

(24)     That at the commencement of the Debtor's bankruptcy case, the Debtor resided in
         the Property and used the Property as her residence.

[Doc. #27].

### Additional Background

On May 13, 2013, Debtor acquired the Property described as 920 Bury Rd, Oregon, OH

43616 through a general warranty deed that was subsequently recorded with the Lucas County

Recorder's Office on May 22, 2013. (Ex. 2).  At the time Debtor acquired the Property, the

Property was an empty lot.  After acquiring the Property, a residential house was constructed on

the Property.

In 2017, The Danberry Co. ("Danberry") entered into a written agreement with Debtor.  In

the agreement, Danberry would be the exclusive listing agent for the sale of Debtor's Property in

return for a commission for Danberry's services.  Danberry was entitled to a commission if Debtor

---

1/  At the hearing, the parties informed the court that Debtor's son is no longer a minor.

accepted an offer for the purchase of the Property.

Danberry procured a purchaser for the Property and presented Debtor with an offer. Debtor accepted the offer. Debtor executed a written purchase agreement. Under the purchase agreement, the parties were to close on the Property on or before January 15, 2018, and Debtor was required to give up possession of the Property within five days after closing.

However, Debtor was unwilling to turnover possession of the Property because the house she intended to move into would not be ready five days after the closing.

The closing did not occur as scheduled.

On or about February 2, 2018, Danberry filed a lawsuit in the Lucas County Court of Common Pleas ("State Court"). Danberry, in part, claimed there was a breach of contract because the commission was owed under the written agreement between Danberry and Debtor. Debtor answered the complaint and filed certain counterclaims against Danberry.

On February 20, 2019, Danberry filed a motion for summary judgment on its claim for breach of contract, seeking payment of its commission. On March 8, 2019, Debtor filed an opposition to Danberry's motion for summary judgment, claiming the agreements were void or unenforceable and further claiming that Danberry's agent breached its fiduciary duties to Debtor.

On May 23, 2019, the State Court granted Danberry's motion for summary judgment as to its breach of contract claim and on Debtor's counterclaims. The State Court found Danberry and Debtor entered into a valid agreement, Danberry procured an offer to purchase the Property, and Debtor accepted the offer to purchase the Property, thereby obligating Debtor to pay Danberry the commission. (Ex. 8). The State Court dismissed Debtor's counterclaims finding there was no genuine issue of material fact. The State Court then set a hearing for July 9, 2019, to potentially resolve the remaining issue of damages. Debtor testified she did not know that summary judgment

had been entered and did not know what that term meant.

Debtor was notified by email of all the orders entered in State Court.

On July 9, 2019, Debtor, through counsel, filed a motion for reconsideration in the State Court. Debtor submitted a detailed affidavit with the motion for reconsideration addressing all of the State Court's factual findings in an attempt to persuade the State Court to vacate the granting of summary judgment.

On July 11, 2019, the State Court set an Assessment of Damages hearing for September 18, 2019. (Ex. 9). The State Court also took the motion for reconsideration under advisement.

On August 9, 2019, the State Court denied Debtor's motion for reconsideration.

On August 21, 2019, Debtor testified she received an email from Suze Orman about four "Must Have Documents" to deal with debts and protect assets in case of illness. These documents included a will, a living revocable trust, a financial power of attorney, and an advance directive and durable power of attorney for health care. Debtor already had a will, which she had made fifteen years ago.

During this period, Debtor testified she was experiencing some health issues, and that there had been a death in her family that resulted in a messy probate situation.

The Debtor testified that the email from Suze Orman caught Debtor's attention because of her health issues and the death in her family. Debtor understood the email as only dealing with debts associated with a home or a car. In addressing the benefits of a living revocable trust, the email emphasized the trust's role for spouses with limited capacity; however, Debtor was not married.

On September 2, 2019, Debtor formed the Trust without an attorney, and transferred the Property to the Trust on September 9, 2019, using a quitclaim deed. The recitals in the deed stated

that the transfer was for valuable consideration. However, the parties stipulated that the Debtor transferred the Property to the Trust voluntarily for no consideration.

The Trust provides that Debtor, as trustee, would hold, manage, and invest any and all property transferred to the Trust, and was authorized to use any and all property transferred to the Trust. (Ex. 15). Debtor is also designated as lifetime beneficiary. Debtor, as grantor, is empowered to remove and replace a trustee at any time. (Ex. 15, p. 13). Debtor, as trustee, also maintains management control over the Property in the same manner as she did prior to the transfer. Debtor testified that she created the Trust and transferred the Property to the Trust to support her son in case of Debtor's death.

Debtor did not create the other "Must Have Documents" listed in the email from Suze Orman, which included the financial power of attorney and the advance directive and durable power of attorney for health care. Debtor stated she did not create these remaining essential documents because Debtor did not have anyone to fill those roles.

Debtor appointed a "Successor Trustee," and potentially even a "Second Successor Trustee," within the Trust to fill the role of a replacement trustee, if needed.

Debtor testified she did not understand the legal implications of a revocable living trust.

On or about October 3, 2019, the State Court entered a judgment entry and order. The State Court entered judgment in favor of Danberry in the amount of $19,873.24, with interest at the rate of 5% a year from the date of judgment. Debtor testified she did not create the Trust to keep the property away from Danberry. Debtor was told Danberry would attempt to garnish her wages. Although Debtor testified she did not leave her job to avoid wage garnishments, Debtor was unemployed at some point after the judgment entry on October 3, 2019.

Debtor was aware Danberry had started the process to garnish Debtor's wages. Debtor

could not recall the date Danberry started the process to garnish Debtor's wages. Debtor's employer alerted her Danberry had filed paperwork to garnish Debtor's wages.

On October 9, 2019, Danberry filed a certificate of judgment with the Lucas County Court of Common Pleas and was given a judgment lien. (Ex. 12). Debtor testified she was unaware Danberry had attempted to file a lien on the Property. Under Ohio law, Plaintiff's judgment lien would not attach to the Property because the deed was no longer in Debtor's personal name, but was now titled in the name of the Trust.

On October 31, 2019, Debtor, proceeding *pro se*, appealed the judgment entered on or about October 3, 2019. Debtor was motivated to spend over "100 hours" researching and writing an appellate brief to overturn the judgment entry.

Debtor testified the State Court somehow stopped Danberry's wage garnishment process after she appealed the judgment entered on or about October 3, 2019. Danberry never received any money from Debtor's wages

On November 20, 2020, the Sixth Appeal District of the Court of Appeals of Ohio affirmed the State Court's grant of summary judgment in favor of Danberry. (Ex. 14).

On November 20, 2019, Debtor refinanced her mortgage with Amerisave Mortgage Corporation. Debtor executed a $245,000.00 promissory note in favor of Amerisave Mortgage Corporation, securing the note with an open-end mortgage along with an executed revocable trust rider. Debtor received approximately $96,000.00 through the refinancing of Debtor's mortgage. Debtor stated she was unaware of any reason why the Trust would have anything to do with $96,000.00 in proceeds she received from her mortgage refinancing. The "Revocable Trust Rider", which was one of the mortgage documents executed as part the mortgage refinance, included the trustee of the Trust as the "borrower." (Ex. 19). Debtor executed the "Revocable

8

Trust Rider" in her capacity as trustee of the Trust. At the time of filing, the mortgage was listed as $232,427.00. It appears the amount owed on her mortgage had been just under $140,000.00 before the mortgage refinancing.

Debtor did not provide a satisfactory explanation why increasing her mortgage obligation by $96,000.00 was necessary. Debtor did not explain how refinancing the mortgage obligation and increasing the amount owed, and reducing any equity available in the Property, aligned with her stated intention of creating the Trust and transferring the Property to the Trust in order to provide support to her son. Debtor testified that her mind does not equate things of that nature.

On November 25, 2019, Debtor received a disbursement of $96,000.00 and transferred $10,000.00 of these proceeds to an ex-boyfriend. This transfer was not disclosed in her Statement of Financial Affairs.

After November 25, 2019, Debtor spent $15,000.00 in paving the driveway on the Property. After November 25, 2019, Debtor used $10,000.00 to repay a 401k loan. After November 25, 2019, Debtor used an unspecified amount for basement repairs.

After these expenditures, Debtor had approximately $50,000.00, which Debtor placed in a savings account, opting to pay mortgage interest on these funds. Debtor testified she used the remaining proceeds during her period of unemployment.

Debtor did not make any payment towards Danberry's judgment debt.

On July 9, 2021, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. At the time of filing, Debtor used the Property as her residence, was not behind on any of her debts, and had not missed any payments on her lines of credit. Debtor testified she has a degree in Information Technology and had experience conducting background investigations.

9

On August 31, 2021, Plaintiff filed an *Objection to Debtor's Claim of Exemptions* in Debtor's main bankruptcy case. [Bankr. No. 21-31239, Doc. #18]. Debtor filed a *Response to Trustee's Objection to Exemption*. [Bankr. No. 21-31239, Doc. #24].

On September 3, 2021, Plaintiff commenced this adversary proceeding. On September 13, 2021, Plaintiff filed an *Amended Complaint to Avoid Fraudulent Transfer, to Recover Property or in the Alternative to Revoke Trust and for Turnover of Property and to Disallow Exemption*. [Doc. #7].

On October 1, 2021, Defendants filed a Response to the Amended Complaint. [Doc. #10].

On October 19, 2021, this court held a hearing on the Objection to Claim of Exemption, [Bankr. No. 21-31239, Doc. #18], and related Response, [Bankr. No. 21-31239, Doc. #24]. At the hearing, the court agreed that it would accede to the parties' joint request and decide the issue of Debtor's claim of exemption based upon the assumption that Plaintiff would prevail in avoiding Debtor's transfer of the Property to the Trust. The parties subsequently filed a stipulation of facts. On November 16, 2021, Plaintiff filed a *Motion For Summary Judgment* in this adversary proceeding arguing, in part, Debtor's claim of exemption should not be allowed if Plaintiff prevailed in avoiding the transfer of the Property to the Trust. [Doc. #16].

On February 14, 2022, the court ordered that Debtor's homestead exemption would be limited to her equity in the value of her "lifetime beneficiary interest." *In re Nadeau*, 2022 WL 456708, 2022 Bankr. LEXIS 363 (Bankr. N.D. Ohio Feb. 14, 2022). On February 25, 2022, Plaintiff filed a *Motion to Alter and Amend Judgment* in the main bankruptcy case arguing that the "lifetime beneficiary interest" could be recovered by the Trustee. [Bankr. No. 21-31239, Doc. #37]. On September 28, 2022, the court denied Plaintiff's *Motion to Alter and Amend Judgment*. *In re Nadeau*, 2022 WL 4542768, 2022 Bankr. LEXIS 2779 (Bankr. N.D. Ohio Sept. 28, 2022).

On October 25, 2022, Plaintiff filed a *Motion Requesting Pretrail* in this adversary proceeding. [Doc. #17].

On November 30, 2022, the court entered an *Adversary Proceeding Scheduling Order* scheduling a hearing on Plaintiff's claims for an order avoiding the transfer of the Property to the Trust on February 9, 2023. [Doc. #21]. The court further ordered the parties to file and exchange exhibit and witness lists.

On February 1, 2023, Defendants filed a *Motion to Continue Hearing On /Trial*. [Doc. #23]. On February 3, 2023, the parties submitted an *Agreed Order on Motion to Continue Trial* to March 30, 2023. [Doc. #24].

On March 27, 2023, Plaintiff filed an exhibit list and witness list. [Doc. #26]. On March 27, 2023, Plaintiff filed a *Stipulation of Parties regarding Certain Facts and Admissibility of Exhibits*, which sets forth stipulated facts regarding the admissibility of the exhibits by the parties. [Doc. #27].

On March 30, 2023, the court held the trial. Evidence was submitted and the matter was taken under advisement.

Overall, the court finds that the Debtor lacked credibility. Debtor was generally evasive on facts that might hurt her case but could clearly recall facts that would help her case. There were also inconsistencies in Debtor's testimony. For example, her claims that she lacked sophistication and understanding was contradicted by the appellate documents she drafted.

## LAW AND ANALYSIS

Plaintiff's Amended Complaint requests an order and judgment avoiding the transfer as a fraudulent transfer under 11 U.S.C. §548(a)(1)(A), and in the alternative, avoidance as a fraudulent transfer under §§548(a)(1)(B), 544(b), and 548(e). For the reasons below, this court finds Plaintiff has met his burden of proving the transfer was made with actual intent to hinder, delay, or defraud.

11

Accordingly, Plaintiff may avoid the transfer of the Property under both §548(a)(1)(A) and §548(e).

## I.   11 U.S.C. §548(a)(1)(A)

"Section 548(a)(1)(A) addresses so-called 'actually' fraudulent transfers, which are 'made . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted.'" *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 888–89 (2018).[2]  This section permits the avoidance of a transfer made within two years of the filing of the bankruptcy petition if the transfer was made with the intent to hinder, delay, or defraud the transferor's existing or future creditors. *See, Schilling v. Heavrin* (*In re Triple S Rests., Inc.*), 422 F.3d 405, 410 (6th Cir. 2005); *see also, Se. Waffles, LLC v. IRS* (*In re Se. Waffles, LLC*), 460 B.R. 132, 137–38 (B.A.P. 6th Cir. 2011).

A "trustee seeking to avoid a transfer carries the burden of proving each statutory element by a preponderance of the evidence." *Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), 196 F. App'x 337, 341 (6th Cir. 2006); *accord Slone v. Lassiter* (*In re Grove-Merritt*), 406 B.R. 778, 789 (Bankr. S.D. Ohio 2009).  Accordingly, to prevail under §548(a)(1)(A), a trustee must show: "(1) Debtor had an interest in the property transferred; (2) the transfer occurred within two years of the date the petition was filed; and (3) the transfer was made with actual intent to hinder, delay, or defraud a creditor . . . ." *Kovacs v. Berger* (*In re Berger*), 2007 WL 2462646 at *3, 2007 Bankr.

---

2/  Section 548(a)(1)(A) provides in relevant part:

(a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . .

11 U.S.C. §548(a)(1)(A).

LEXIS 2884 at *6–7 (Bankr. N.D. Ohio Aug. 27, 2007)(Whipple, J.); *see also, Baumgart v. Ptacek* (*In re Ptacek*), 2019 WL 4049842 at *8, 2019 Bankr. LEXIS 2725 at *23 (Bankr. N.D. Ohio Aug. 27, 2019)("A trustee must satisfy three 'core elements' to have an actual fraudulent transfer set aside under Section 548(a)(1)(A): (1) the transfer, (2) the timing, and (3) the intent."); *Hunter v. Society Bank & Tr.* (*In re Parker Steel Co.*), 149 B.R. 834, 854 (Bankr. N.D. Ohio 1992).

### A. Transfer

"'The Bankruptcy Code defines "transfer" very broadly' and it includes 'each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with - (i) property; or (ii) an interest in property.'" *Hagan v. Baird* (*In re B & P Baird Holdings, Inc.*), 759 F. App'x 468, 479 (6th Cir. 2019)(quoting *Meoli v. The Huntington Nat'l Bank*, 848 F.3d 716, 728 n.6 (6th Cir. 2017); 11 U.S.C. §101(54)(D))(alteration omitted). The Stipulation provides that Debtor transferred all her interest in the Property by way of a quitclaim deed. [Doc. #27, p. 3, ¶14]. A quitclaim deed is generally "a mode of parting with property or an interest in property." *Dymarkowski v. Boyd* (*In re Bailey*), 2020 WL 6342862 at *5, 2020 Bankr. LEXIS 2621 at *13 (Bankr. N.D. Ohio Sept. 30, 2020). Here, the quitclaim deed was a mode of parting with an interest in property, *see, Crawforth v. Wheeler* (*In re Wheeler*), 444 B.R. 598, 606 (Bankr. D. Idaho 2011), and thus constitutes a "transfer" under the Bankruptcy Code.

Debtor also had an interest in the property transferred. The phrase "interest of the debtor in property" as used in §548, is not specifically defined. However, the Supreme Court has noted that property interests are created and defined by state law. *In re Mark Benskin & Co., Inc.*, 1995 WL 381741 at *6, 1995 U.S. App. LEXIS 16053 at *15 (6th Cir. June 26, 1995)(per curiam)(quoting 11 U.S.C. § 548; *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). To determine whether there is an interest of the debtor in property under §548, the "Supreme court has interpreted these statutes as including in a debtor's estate 'that

13

property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings.'" *Cannon v. J.C. Bradford & Co.* (*In re Cannon*), 277 F.3d 838, 849 (6th Cir. 2002)(quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990)).

Debtor acquired title to the Property by general warranty deed, which was recorded on May 22, 2013. This deed titled the Property in Debtor's name. [Ex. 2]. Debtor had an interest in the Property as it was titled solely in her name.

Debtor transferred the Property to the Trust by executing the quitclaim deed. [Ex. 17]. The Debtor and Debtor's son are beneficiaries with respect to the Property under the Trust. [Doc. #27, p. 3, ¶20]. The interest held by Debtor's son, a beneficiary with respect to the Property under the Trust, was an interest in property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings. Thus, the interest held by Debtor's son was an interest in property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings.

### B. Timing

A trustee may avoid any transfer that was made or incurred on or within two years before the date of the filing of the petition. 11 U.S.C. §548(a)(1). "For purposes of fraudulent transfer claims under §548, the date the conveyance of the Property was recorded, thus perfected under Ohio law, constitutes the date of the transfer." *Slone v. Lassiter* (*In re Grove-Merritt*), 406 B.R. 778, 789 (Bankr. S.D. Ohio 2009). Here, the transfer of Property occurred on September 9, 2019, the date the quitclaim deed was recorded. [Ex. 17]. Debtor's petition was filed on July 9, 2021, approximately 1 year and 10 months after the transfer. [Ex. 1]. Thus, the transfer falls within the applicable reachback period under §548(a).

### C. Intent

The remaining issue is intent. Trustee has the burden of proving Debtor held the "actual

intent to hinder, delay, or defraud" any entity which the debtor was or became indebted to. 5 *Collier on Bankruptcy* ¶548.04 (16th ed. 2023)("The classic statement of a fraudulent transfer is a transfer made or an obligation incurred with the intent to hinder, delay, defraud creditors. These were the words used in the original Statute of Elizabeth of 1571 . . . ."). "The debtor must possess an intent to hinder, an intent to delay or an intent to defraud. The requirement is disjunctive; any one of the three intents is sufficient for liability." 5 *Collier on Bankruptcy* ¶548.04[1][a] (16th ed. 2023). "This intent 'to hinder, delay, or defraud' creditors need not target any particular entity or individual as long as the intent is generally directed toward present or future creditors of the debtor." *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC* (*In re Bayou Grp., LLC*), 439 B.R. 284, 304 (S.D.N.Y. 2010)(citing 5 *Collier on Bankruptcy* ¶ 548.04[1] (15th ed. rev. 2006)).

Section 548(a)(1)(A) requires proof of "actual" intent, as distinguished from constructive intent, which in turn requires proof of the debtor's subjective state of mind. *See, Hunter v. Society Bank & Tr.* (*In re Parker Steel Co.*), 149 B.R. 834, 854 (Bankr. N.D. Ohio 1992)(citing *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 484 (4th Cir. 1992)); 5 *Collier on Bankruptcy* ¶548.04[1][b] (16th ed. 2023). However, proof of "actual" intent to hinder, delay, or defraud creditors is rarely proven by direct evidence. *See, Schilling v. Heavrin* (*In re Triple S Rests., Inc.*), 422 F.3d 405, 416 (6th Cir. 2005); *In re Gabor*, 280 B.R. 149, 157 (Bankr. N.D. Ohio 2002). Instead, courts infer fraudulent intent from certain attendant circumstances commonly associated with a fraudulent transfer, which are known as "badges of fraud." *See, In re Triple S Rests., Inc.*, 422 F.3d at 414 (quoting *United States v. Issac*, 968 F.2d 1216, 1992 WL 159795 at *4 (6th Cir. July 10, 1992)). Generally, badges of fraud are proof of certain objective facts, such as "a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly

inadequate consideration," which raise a rebuttable presumption of actual fraudulent intent for purposes of establishing that a transfer was made with actual intent to hinder, delay, or defraud. *See, BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 541 (1994).

Put differently, badges of fraud generally serve as circumstantial evidence and thus a means of establishing whether the transfer was made with "actual" intent designed "to hinder, delay, or defraud" future or existing creditors. *See id.* at 540; *see also, Whitaker v. Mortg. Miracles, Inc.* (*In re Summit Place, LLC*), 298 B.R. 62, 70 (Bankr. W.D.N.C. 2002)(recognizing the law seeks to avoid transfers that prejudice the rights of creditors).

Federal courts often recite various badges of fraud including the following:

(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.

5 *Collier on Bankruptcy* ¶548.04[1][b] (16th ed. 2023); *see also, United States v. Leggett*, 292 F.2d 423, 426 (6th Cir. 1961)("Inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of 'badges of fraud.'"). However, "all lists of specific badges of fraudulent intent are necessarily illustrative, not exhaustive." *Corzin v. Digiammarino* (*In re Maglione*), 559 B.R. 489, 495–96 (Bankr. N.D. Ohio 2016).

If proof of the existence of sufficient badges of fraud warrant an inference of fraud, then the "burden of proof shifts to the defendant to explain the transaction and show that it was not fraudulent." *In re Triple S Rests., Inc.*, 422 F.3d at 414 (citing *United States v. Westley*, 7 Fed. Appx. 393, 400 (6th Cir. Mar. 21, 2001)).

16

Badges of fraud are circumstances so frequently attending fraudulent transfers that they call for an explanation that the "conveyance was fairly made and not tainted with an intent to accomplish a fraudulent purpose." *Id.* (citing *Isaac*, 1992 WL 159795, at *4). "Although the presence of a single badge may only raise the suspicion of debtor's fraudulent intent, the confluence of several badges can be conclusive evidence of fraudulent intent," absent evidence that the conveyance was fairly made and not tainted with an intent to accomplish a fraudulent purpose. *In re Maglione*, 559 B.R. at 495; *Russell v. Harper* (*In re Dearmond*), 2017 WL 4220396 at *5, 2017 Bankr. LEXIS 3188 at *13 (Bankr. E.D. Tenn. Sept. 21, 2017)(citing *United States v. Westley*, 7 Fed. Appx. 393, 400 (6th Cir. Mar. 21, 2001); *Green v. Stevenson* (*In re Stevenson*), 69 B.R. 49, 50 (Bankr. E.D. Mo. 1986)).

Since no direct evidence was introduced to establish that the transfer was made with actual intent to hinder, delay, or defraud the Debtor's creditors, the court turns to the circumstantial evidence or "badges of fraud" raised by Plaintiff from which to infer Debtor's actual intent to hinder, delay, or defraud Debtor's creditors. In this case, the evidence in its totality indicates that the transfer of the Property to the Trust within two years prior to the bankruptcy filing was made with actual intent to hinder, delay, or defraud creditors. The presence of badges of fraud and the attending circumstances raised an inference of fraudulent intent that was not sufficiently rebutted.

1. *The lack or inadequacy of consideration*

The parties stipulated that no consideration was provided for the transfer of the property to the trust. *See e.g., Luker v. Eubanks* (*In re Eubanks*), 444 B.R. 415, 425 (Bankr. E.D. Ark. 2010)("The parties stipulated to the fact that no consideration was provided for the transfer of the property interest."). Thus, this badge of fraud was shown to exist for this transaction.

2. *The family, friendship, or close associate relationship between the parties*

Transfers between parties with a close relationship prompt greater scrutiny as to the

17

presence or absence of innocent purpose. *See, In re Triple S. Rests.*, 422 F.3d at 414–15. Moreover, transfers of property to a trust whose beneficiaries are the transferor or transferor's children cast a suspicion on the transfer. *See, Waldron v. Huber* (*In re Huber*), 493 B.R. 798, 813 (Bankr. W.D. Wash. 2013); *cf. Citibank, N.A. v. Bombshell Taxi LLC* (*In re Hypnotic Taxi LLC*), 543 B.R. 365, 374 (Bankr. E.D.N.Y. 2016); *Block v. Moss* (*In re Moss*), 258 B.R. 405, 426 (Bankr. W.D. Mo. 2001); *Greystone Bank v. Neuberg*, 2011 WL 3841542 at *4, 2011 U.S. Dist. LEXIS 96669 at *10 (E.D.N.Y. Aug. 25, 2011)("Plaintiff's allegations touch on several of these badges. Plaintiff alleges a family relationship between the transferors—a husband and wife—and the transferee— a Trust whose beneficiaries are the transferors' children."). Here, Debtor is the grantor and trustee of the Trust, and the beneficiaries are Debtor and her son. Accordingly, the court finds the Plaintiff also established the existence of this badge of fraud.

### 3. *The retention of possession, benefit or use of the property in question*

A "retention of the use of transferred property very strongly indicates a fraudulent motive underlying the transfer." *Williams v. Hous. Plants & Garden World, Inc.*, 508 B.R. 19, 27 (S.D. Tex. 2014)(citation omitted). Debtor, as trustee, had the power use the Property and refinance it, and Debtor, as grantor, retained the power to revoke the Trust arrangement entirely. The Trust provides that Debtor, as trustee, would "hold, manage, and invest the" property (Ex. 15), and was authorized to use the Property. (Ex. 15). Debtor is also a lifetime beneficiary. Furthermore, Debtor, as grantor, is empowered to remove and replace a trustee at any time. (Ex. 15, p. 13). Debtor, as trustee, also maintains management control over the Property in essentially the same manner as she did prior to the transfer.

In *Dearmond*, in addition to the debtor's testimony that retention of control was the reason for the transfer, the trust agreement provided that the debtor would "hold, manage, and invest the trust property, and shall collect and receive the income," confirming that retention of possession

18

constituting was a present badge of fraud. *See, Russell v. Harper* (*In re Dearmond*), 2017 WL 4220396 at *6, 2017 Bankr. LEXIS 3188 at *16 (Bankr. E.D. Tenn. Sept. 21, 2017). Here, the evidence shows no change in the use of the Property was effectuated by the transfer and "the only change (to the extent any change at all took place) was a change in title." *In re Moss*, 258 B.R. at 426. The parties Stipulation also specifically provided that Debtor used the Property as her residence at the time of filing. [Doc. #27, p. 2 ¶5]. As in *Dearmond*, this badge of fraud is present here.

> 4. *The financial condition of the party sought to be charged both before and after the transaction in question*

"[S]ection 548(a)(1)(A) does not require the trustee to show that the debtor was insolvent when the transaction occurred or that the transaction rendered the debtor insolvent." 5 *Collier on Bankruptcy* ¶548.04[1][b] (16th ed. 2011). Neither party presented sufficient evidence to determine Debtor's balance sheet solvency either before or after the transfer. Such a determination is unnecessary under §548(a)(1)(A). However, the court notes Debtor voluntarily transferred the Property, her primary asset. Further, there appears to be no dispute that the judgment creditor, Danberry, received no payment on its judgment.

> 5. *The existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and 6. The general chronology of the events and transactions under inquiry*

The evidence establishes the presence of these two related badges of fraud.

A review of the chronology reflects that the Debtor's transfer was made during a pending lawsuit, on the eve of the entry of judgment. Prior to the transfer, litigation was pending against Debtor. [Doc. #27, p. 3, ¶22]. On May 23, 2019, the State Court found Debtor liable to Danberry, with the issue of damages remaining unresolved. Accordingly, on May 23, 2023, the debt was contingent as to the amount owed.

19

On July 9, 2019, Debtor filed a motion to reconsider the judgment, which was denied by the State Court on August 9, 2019. On July 10, 2019, before the motion to reconsider the judgment was denied, the State Court scheduled a hearing to assess damages, which would take place on September 19, 2019. On September 2, 2019, Debtor created the Trust and on September 9, 2019, Debtor transferred the Property to herself as trustee of the Trust for "valuable consideration." However, as noted above, the Stipulation provides there was no actual consideration paid for the transfer. [Doc. #27, p. 3, ¶16]. Shortly after the transfer, on October 3, 2019, the state court issued a judgment against Debtor for $19,873.23, plus interest and costs. [Doc. #27, p. 2, ¶23].

The debt was contingent before the transfer and the debt was liquidated after the transfer. Thus, Debtor made the transfer during a pending lawsuit and before a debt was liquidated. The timing of the creation of the Trust and the transfer for no consideration while retaining possession and control of the Property are compelling badges of fraud.

The Plaintiff's evidence tracked the traditional badges of fraud, which can invalidate "transfers designed to delay, hinder or defraud creditors and others" proven by "certain objective facts (for example, a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration) . . . ." *BFP*, 511 U.S. at 540–41 (citation omitted)(internal quotation marks omitted). Here, Debtor transferred the Property to the Trust. A beneficiary was Debtor's son, thus transferring the Property "to a close relative." *See id.* at 541. The other beneficiary was the Debtor herself. Debtor's "transfer of title without transfer of possession" provided her with complete control of the Property. *See id.* Lastly, since the parties stipulated no consideration was provided for the transfer, it was made for "grossly inadequate consideration." *See id.*

Given the chronology of events, including the number and strength of the badges of fraud

present in the transfer, Plaintiff satisfied his burden, giving rise to the inference of fraudulent intent. Accordingly, the burden shifted to Debtor to prove the transfer was not fraudulent. *In re Wyman*, 626 B.R. 480, 497 (Bankr. S.D. Ohio 2021); *In re Maglione*, 559 B.R. 489, 496 (Bankr. N.D. Ohio 2016). Debtor did not overcome the presumption raised by the many badges of fraud that Plaintiff demonstrated were present in this transfer.

Debtor's testimony was directed at convincing the court that the transfer was solely intended as estate planning in the event of her death. Debtor testified that a mixture of events prompted the creation of the Trust and the transfer of the Property. Debtor received an email highlighting the benefits of avoiding probate with a revocable living trust in the event of a spouse's health-related death. Debtor testified she received this email after a death in Debtor's family. Considering her health issues, she asserted that she wanted to spare her family from complications after her passing and secure a home for her son if needed.

However, Debtor was incapable of remembering or going into details about facts that might have hurt her case. But, for facts that would help her case, Debtor was capable of going into substantial detail about certain events. For example, Debtor could not pinpoint when she learned of the judgment entry on May 23, 2019, finding her liable in favor of Danberry, but clearly remembered enrolling in retirement plans back in 2008 and 2009.

Notably, Debtor was adamant about her faltering memory regarding the summary judgment entry. However, Debtor received email notifications and attended some of the hearings but claimed she never got an email about - or paid no attention to - the summary judgment entry. Yet, on July 9, 2019, she submitted an affidavit with further testimony to the court of Common Pleas of Lucas County, Ohio when filing for reconsideration of the summary judgment entry. [Ex. 10] ("Defendant supports her Motion with an Affidavit wherein she appears to respond to and offer

21

additional testimony with respect to the Court's May 23rd factual findings."). The act of making the affidavit appears to reflect knowledge of the significance of her legal loss. Simultaneously, Debtor was motivated to dedicate over "100 hours" researching and drafting the appeal of the $19,873.23 judgment. Debtor's inability to recall events during the lawsuit, especially when things had turned against her, was not credible.

Additionally, on August 21, 2019, Debtor received the email from Suze Orman (a popular personal finance advisor) discussing "Must Have Documents" to protect assets in case of illness. These documents included a will, a trust, a financial power of attorney, and an advance directive and durable power of attorney for health care. The email did not speak directly to her situation other than mentioning health concerns. As noted above, in addressing the benefits of a trust, the email emphasized the revocable living trust's role for spouses with limited capacity. However, Debtor was not married. Nevertheless, on September 2, 2019, approximately two weeks after receiving the email, Debtor created the Trust and then transferred her main asset, the Property, to the trust. Despite already having a will, Debtor did not create the other "essential documents" because she claimed she did not have anyone to fill those roles. Yet she managed to appoint a "Successor Trustee," and potentially even a "Second Successor Trustee," to serve as trustee of the Trust. [Ex. 15, pp. 12, 18].

Debtor also testified that she depended solely on the email and failed to grasp the ramifications of establishing a trust. Debtor stated that she understood the email only dealt with specific debts associated with a home and car. Debtor claimed that she did not do any research about the benefits and consequences of creating a revocable living trust. This testimony raised questions about her credibility, considering her background—a Debtor with an Information Technology degree, experience in conducting background investigations, and the dedication to

spend over "100 hours" researching and drafting an appellate brief to overturn the State Court's judgment entry. Debtor's assertion that she knew nothing about trusts when she transferred the Property was not credible.

Debtor's actions after the transfer also undermined her testimony that she did not comprehend the legal implications of a trust. On November 20, 2019, Debtor executed a $245,000.00 promissory note in favor of Amerisave Mortgage Corporation, securing the note with an open-end mortgage[3] along with an executed revocable trust rider. [Ex. 19]. Debtor testified to refinancing the mortgage through these documents, and receiving a $96,000.00 disbursement on November 25, 2019. However, Debtor offered no clear reason for needing the $96,000.00 (an increase on the mortgage obligation from about $149,000.00), only mentioning she merely received an offer and thought refinancing was a good idea.

It is also troubling to view the new mortgage loan in the context of entitlement to the Ohio homestead exemption of $145,425.00. At the time of filing, Debtor listed the amount owed on her refinanced mortgage as $232,427.00. The mortgage and exemption totaled approximately $377,852.00, just matching or exceeding the Property's approximate fair market value. Although Debtor claimed she did not believe the Trust would have anything to do with the $96,000.00 disbursement, Debtor executed the revocable trust rider as part of her mortgage documents, [Ex. 19, p. 19–22], which states the "borrower" includes the trustee of the Trust.

Refinancing also contradicts Debtor's purported purpose for the transfer to the Trust, providing for her son. Refinancing increased the obligation under the mortgage, raised her monthly payments, and reduced available equity—contrary to Debtor's stated intent to provide for

---

3/ An open-end mortgage is generally a mortgage which provides for future advances on the given mortgage and increases the amount of the existing mortgage. *See generally In re Presser*, 504 B.R. 452, 456–58 (Bankr. S.D. Ohio 2014)(outlining the statutory requirement of an open-end mortgage in Ohio).

23

her son in the event of her death. Instead, refinancing resulted in less equity if Debtor's son were to sell the Property in the future, and increased cost if he elected to use the Property as his residence.

Debtor's testimony on the $96,000.00 in proceeds from the refinance was also perplexing. Debtor used the funds in several ways: first, $15,000.00 for driveway paving; second, an unspecified amount for basement repairs; third, $10,000.00 to repay a 401k loan; and fourth, $10,000.00 to settle a loan with an ex-boyfriend. Debtor did not disclose the transfer of $10,000.00 to her ex-boyfriend in her Statement of Financial Affairs. At most, Debtor had $50,000.00 after these expenditures.

Debtor placed the remaining proceeds from the refinance in a savings account and testified she used the balance of the proceeds during a period of unemployment. Notably, Danberry initiated the process to garnish Debtor's wages, but it appears Debtor went through her period of unemployment before Danberry could garnish any wages. As explained above, Debtor claimed ignorance of any connection between the Trust and the proceeds from the refinance, though Debtor executed the revocable trust rider as trustee.

Debtor's explanation is also undercut upon a closer examination of the transfer. On July 9, 2019, the Debtor, through counsel, submitted a detailed affidavit with the motion for reconsideration in the State Court, seeking to overturn the granting of summary judgment against her. On August 12, 2019, Debtor received the email about the benefits of forming a revocable living trust. On September 2, 2019, twenty-one days after receiving the email, Debtor formed the Trust. On September 9, 2019, Debtor recorded the deed transferring the Property. In the matter of a single month, Debtor transferred her primary and most valuable asset to the Trust. The Sixth Circuit has held "secret or hurried transactions not in the usual mode of doing business" are subject

24

to increased scrutiny because it is a common example of a badge of fraud. *United States v. Leggett*, 292 F.2d 423, 427 (6th Cir. 1961). Here, the transfer of the Property to the Trust, within a matter of weeks, shortly before the entry of judgment is an indicia of fraud that was not rebutted by Debtor's explanation that the transfer was for the purpose of protecting her son as a result of her health issues.

For all these reasons, Debtor failed to establish that the transfer "was fairly made and not tainted with an intent to accomplish a fraudulent purpose." *In re Triple S Rests., Inc.*, 422 F.3d at 414 (citing *Isaac*, 1992 WL 159795 at *4). The timing of the transfer is a strong suspicion that there was an attempt to evade creditors. *See e.g., McGirr v. Rehme*, 891 F.3d 603, 612 (6th Cir. 2018). As in *McGirr*, Debtor "already 'had been sued'" and "realized that judgment may soon be handed down against" her. *Id.* (citations omitted). Debtor did not meet her burden of rebutting the many badges of fraud present here. There was simply more evidence that Debtor transferred assets out of her name on the eve of a judgment to evade payment, and little credible evidence that the transfer was fairly made without a general intent to delay, hinder, or defraud.

While a debtor can seek to explain away the existence of multiple badges of fraud, the court is not required to accept such explanations if they are not sufficiently credible to overcome the strong evidence of the existence of circumstantial factors that courts have historically looked to in inferring an intent to hinder, delay or defraud creditors. *See e.g*., *Cianfichi v. Camarillo* (*In re Camarillo*), 2005 WL 2203163 at *6, 2005 Bankr. LEXIS 1718 at *18 (Bankr. N.D. Cal. May 10, 2005)(debtor's explanation failed to acknowledge "that transferring the [property] to his brother was, at least in large part, to ensure it would not be vulnerable to creditor collection efforts.").

After considering the available evidence, the court finds it more likely than not that Debtor's subjective motive was to at least hinder or delay collection efforts by at least one creditor.

The litigation with Danberry was contentious, the timing and sequence of the transfer of the Property in relation to the litigation was not adequately rebutted by credible evidence, and the other badges of fraud - lack of consideration, transfer to a self-settled trust, retention of control of the asset, the transfer of the remainder interest to Debtor's son - were, collectively, more convincing than Debtor's explanations. In sum, the available evidence shows Debtor's subjective motive in the transfer was to hinder, delay or defraud a creditor's collection efforts.

## II.  11 U.S.C. §548(e).

Debtor's transfer of the Property is also avoidable under Section 548(e), an avoidance subsection added to the Bankruptcy Code in 2005. While the primary difference between §548(a)(1)(A) and §548(e) is the extended "reachback period," this subsection reflects Congressional concern about transfers of property to "self-settled trusts."

Here, it is appropriate to grant judgment to the Plaintiff under §548(e) because all of the elements required for avoidance under this subsection have been met.

Subsection (e) is applicable only to "transfers of an interest of the debtor in property," and not to obligations incurred. *See*, 5 *Collier on Bankruptcy*, ¶548.07[3][B] (16th Ed. 2023). Here, Debtor's transfer of the Property was a "transfer of an interest of the debtor in property" under the subsection. §548(e)(1).

The transfer of the Property was made to a "self-settled trust" or "similar device" under the statute. §548(e)(1)(A). The Stipulation states: "(18) That the Trust is a self-settled trust." [Doc. #27].

The transfer of the Property was "by the Debtor." §548(e)(1)(B). Debtor was the owner of the Property transferred. [*Id.*, ¶¶4 & 7]. Debtor was the creator of the Trust, [*Id.*, ¶8], and the grantor under the Trust. [*Id.*, ¶11]. The Debtor is also the trustee under the Trust. [*Id.*, ¶10]. Debtor "transferred all of her interest in the Property, by way of a quit-claim deed, to the Trust. . . ." [*Id.*,

[¶14].

The requirement that "debtor is a beneficiary under such trust or similar device" [§548(e)(1)(C)] has been met because Debtor is "the lifetime beneficiary under the trust." [Id., ¶12].

Finally, for the same reasons the court found an actual intent to "hinder, delay or defraud" under §548(a)(1)(A), the court finds that "the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted."

In addition, the statute specifically states: "For the purposes of this subsection, a transfer includes a transfer made in anticipation of any money judgment . . . ." §548(e)(2). Here, the transfer was made just before the Danberry judgment was entered, and the court finds that the transfer was made in "anticipation" of that judgment.

Accordingly, the transfer is also avoided under §548(e).

## CONCLUSION

For all these reasons the court finds, based on the documentary evidence and testimony presented, that Plaintiff carried his evidentiary burden, giving rise to the inference of fraud, and Debtor did not meet her burden of rebutting that inference. Thus, the transfer of the Property to the Trust within less than two years of the date of filing was made with actual intent to hinder, delay, or defraud and is therefore avoidable, and the Trustee shall be entitled to recover the property under 11 U.S.C. §550, and such property shall be preserved for the benefit of the estate under 11 U.S.C. §551. Nothing in this Memorandum of Decision or Judgment should be read to alter or amend the court's earlier decisions on the exemption issue entered in the main case. *See*, Case No. 21-31239, Docs. ##35 & 40.

Accordingly, the court will enter judgment in favor of Plaintiff Douglas A. Dymarkowski

and against Defendants Teresa Nadeau, individually and as Trustee of the 858 Revocable Living Trust for avoidance of the transfer of certain real estate into a trust by Teresa Nadeau under the First Claim for Relief, the Third Claim, and the Fifth Claim for Relief of the Amended Complaint. [Doc. 7].

21-03045-jpg    Doc 39    FILED 09/28/23    ENTERED 09/28/23 16:55:53    Page 28 of 28